**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MARCIA JEMMOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00486** |
| | ) | **Judge Aleta A. Trauger** |
| **DENIS McDONOUGH, Secretary of the** | ) | |
| **Department of Veterans Affairs,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM**</u>

Plaintiff Marcia Jemmott brings suit against Denis McDonough, Secretary of the Department of Veterans Affairs, for (1) disability discrimination in violation of the Rehabilitation Act ("RA"), 29 U.S.C. § 701 *et seq.*; (2) failure to provide a reasonable accommodation for a disability, in violation of the RA; and (3) retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000 *et seq.* (Doc. No. 1.) Now before the court is the defendant's Partial Motion to Dismiss or Alternatively for Partial Summary Judgment ("Motion to Dismiss"),[1] seeking dismissal the plaintiff's RA claims and her claim for punitive damages.[2] (Doc. No. 17.) The defendant submitted a Statement of Material Undisputed Facts and several Affidavits in support of the motion. (Doc. Nos. 19–23.)

---

[1] Prior to filing his motion, the defendant sought from the court and was granted leave to file a motion for partial dismissal. (Doc. Nos. 14, 16.)

[2] The defendant does not concede the Title VII retaliation claim but acknowledges that it is adequately pleaded.

In her Response, the plaintiff concedes that she is not entitled to recover punitive damages and that her claim for such damages is subject to dismissal. (Doc. No. 26, at 1.) The court, therefore, will grant that portion of the defendant's motion without further discussion.

Although she responded to the defendant's Statement of Material Undisputed Facts (*see* Doc. No. 26-2), the plaintiff objects to treating the defendant's motion as one for summary judgment and asserts that she should be entitled to conduct discovery on her RA claims. The defendant filed a Reply (Doc. No. 27), arguing that the plaintiff's disability claims are inadequately pleaded and that the plaintiff is not entitled to discovery to further establish them.

The court will treat the motion as one under Rule 12(b)(6) and will grant it in its entirety, without reference to the evidentiary materials submitted by the defendant.

## I.   STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to

"unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inferences from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

## II.  FACTS ALLEGED IN THE COMPLAINT AND EEOC COMPLAINT

The plaintiff references her EEOC complaint in her federal Complaint, and the defendant submitted it with his Motion to Dismiss. (Doc. No. 18-1.) Because the EEOC complaint is referenced in the Complaint and central to the plaintiff's claims, insofar as exhaustion is a threshold matter in a federal employment discrimination claim, the court will consider the EEOC complaint in ruling on the Motion to Dismiss.

Plaintiff Marcia Jemmott is a resident of Montgomery County, Tennessee and a disabled veteran. (Doc. No. 1 ¶¶ 2, 8.) She was employed by the Department of Veterans Affairs as a Veterans Service Representative in August 2019. (*Id.* ¶ 7.) She was terminated in July 2020. (*Id.* ¶ 24; *see also* Doc. No. 18-1, at 2.) As pertains to the RA claims, the plaintiff alleges that she

"suffers from several physical and mental conditions that cause her difficulty walking, among other things." (Doc. No. 1 ¶ 9.)

In early 2020, a co-worker who, like Jemmott, is Black, walked past their supervisor's office. The supervisor, Adrienne Becnel-Taylor, told the co-worker "not to walk in front of her office." (*Id.* ¶ 10; Doc. No. 18-1, at 2.) Jemmott subsequently walked past Becnel-Taylor's office on her way to lunch, which "led the supervisor to order her to never walk in front of her office, even when Ms. Jemmott protested that she had a disability that made walking difficult, which was obvious to anyone who saw her walk." (Doc. No. 1 ¶ 11.) Jemmott's Black co-worker filed a complaint regarding Becnel-Taylor's conduct. Investigators assigned to the complaint questioned Jemmott, who described her supervisor's order that she not walk by her office. (*Id.* ¶¶ 12, 13.)

Shortly thereafter, in April 2020, Jemmott's entire team began working remotely, due to Covid-19. (*Id.* ¶ 14.) Jemmott "continued to have the same supervisor leading her team as well as a new direct supervisor." (*Id.* ¶ 15.) The new supervisor was James Benesch. (Doc. No. 18-1, at 2.)

For the month of April 2020, Jemmott had poor production numbers because of difficulties the defendant had in configuring her computer profile for remote work. Her direct supervisor told her these numbers would not "count against her." (Doc. No. 1 ¶ 16.) The defendant resolved the configuration issues, but the plaintiff continued to have difficulty working remotely due to technical problems with the computer assigned to her by the defendant. (*Id.* ¶ 17.) In May, she reported the problems to Benesch and requested a new computer, but he "frequently failed to respond and, when he did respond, ignored her explanation that her poor production was because" of the technical difficulties with her computer. (*Id.* ¶ 18.)

She tried to catch up during those times when her computer was functioning properly, but "her supervisors assigned her different claims than the rest of her team." (*Id.* ¶ 19.) Specifically, she alleges that the claims she was assigned to work on were "complex claims that took hours to process," while her colleagues worked on "easy" claims that could each be resolved in fifteen minutes. (*Id.* ¶ 20.) She asked Benesch to assign her a mixture of both complex and easy claims, "rather than the full queue of complex claims that was artificially deflating her production numbers, but he refused." (*Id.* ¶ 21.)

Jemmott then emailed the "acting director," whom she does not identify, to ask to be assigned to a different team. (*Id.* ¶ 22.) "An employee" called her in response to the email, and Jemmott detailed "her entire ordeal" to that employee. (*Id.* ¶ 23.) A few days later, Jemmott received an email from the same "employee" requesting a meeting. (*Id.* ¶ 24.) Jemmott arrived at the meeting expecting to be moved to a different team but learned, instead, that her employment was terminated. (*Id.* ¶ 24.)

Based on these allegations, Jemmott asserts that the defendant "subjected her to disparate treatment because of her disability or because it regarded her as disabled," in violation of the RA. (*Id.* ¶¶ 28, 29.) She also asserts that the defendant violated the RA by "refus[ing] to provide [her] with a reasonable accommodation of walking the shortest route to her . [sic]" (*Id.* ¶ 36.)

The plaintiff states that she filed a "timely charge of discrimination with Defendant's Equal Employment Opportunity office regarding her disability claims." (*Id.* ¶ 6.) As noted above, the defendant filed a copy of the plaintiff's formal EEOC Complaint of Discrimination with its Motion to Dismiss. (Doc. No. 18-1.) In this document, the plaintiff alleged that her former co-worker "filed a complaint against Adrienne Becnel-Taylor" and that John McDonald, the National Call Center Manager, asked Jemmott to participate in "a fact finding investigation." (Doc. No. 18-1, at 2.) The

EEOC complaint does not contain any additional details regarding the plaintiff's interaction with Becnel-Taylor. Instead, the entire remainder of the narrative contained in the EEOC complaint concerns the plaintiff's difficulties in working remotely, her interactions with her direct supervisor, James Benesch (who "report[ed] directly" to Becnel-Taylor (*id.*)), the plaintiff's request for a transfer to a different team, and her eventual termination, which she clearly perceived to be in retaliation for having participated in the investigation into her co-worker's complaint against Becnel-Taylor. (*See id.* at 2–3.)

The EEOC complaint does not contain any allegations that could remotely be construed as alleging discrimination on the basis of a disability, but it appears to be undisputed that the EEOC nonetheless accepted and investigated the plaintiff's disability discrimination claim. (*See* Doc. No. 18, at 6–7.) The EEOC complaint contains no reference to a request for an accommodation, and the plaintiff does not allege that the EEOC investigated or accepted a failure to accommodate claim.

## III.     THE MOTION TO DISMISS

### A.     RA Discrimination Claim

Courts must apply the same standards to RA discrimination claims as those applied to claims under the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 794(d); *see also Burns v. City of Columbus*, 91 F.3d 836, 842 (6th Cir. 1996) ("By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination." (citing 29 U.S.C. § 794(d))).

To prevail on a discrimination claim under the RA, a plaintiff must ultimately prove that she is "(1) disabled; (2) otherwise qualified to perform the essential functions of her position; and (3) suffered an adverse employment action *solely because of* her disability." *Kaminsky v. Wilkie*, 856 F. App'x 602, 604 (6th Cir. 2021) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007))

(emphasis added); *see also* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination under any program or activity receiving Federal financial assistance . . . .").

Claims under the RA are not subject to any heightened pleading standard. *Schobert v. CSX Transp. Inc.*, 504 F. Supp. 3d 753, 777 (S.D. Ohio 2020) (citing *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 583–84 (6th Cir. 2012)). And the pleading standard under Rule 8 does not require a plaintiff to expressly allege facts supporting a *prima facie* claim of disability discrimination in her initial pleading, as the defendant acknowledges in his Response. *Accord Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 493 (6th Cir. 2017) ("[A] *prima facie* case under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework is an evidentiary standard, not a pleading standard."). At the same time, however, "[t]o survive a motion to dismiss, . . . a plaintiff must rest [her] claim to relief on more than conclusory allegations that the defendant violated the law." *Vartinelli v. Aramark Corr. Servs., LLC*, 796 F. App'x 867, 870 (6th Cir. 2019). She must "meet the plausibility pleading standard." *Krueger*, 674 F. App'x at 494. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The plausibility standard requires the plaintiff to "demonstrate more than a 'sheer possibility'" that the defendant has acted unlawfully. *Krueger*, 674 F. App'x at 493 (quoting *Iqbal*, 556 U.S. at 678).

The defendant argues, first, that the Complaint does not plausibly allege that the plaintiff is disabled for purposes of the RA. He also argues that the Complaint does not plausibly allege that the defendant could be liable for disability discrimination, because it is "completely devoid of any facts showing the alleged discriminatory actions occurred 'solely because of [the plaintiff's]

disability.'" (Doc. No. 18, at 8.) In response, the plaintiff argues that she administratively exhausted her discrimination claim,[3] that the Complaint plausibly alleges that she has a disability, and that her factual allegations give rise to an inference that Becnel-Taylor and Benesch knew that she was disabled.

As to whether the plaintiff plausibly alleges that she has a disability, the Complaint plainly states that the plaintiff "suffers from several physical and mental conditions" that "cause her difficulty walking, among other things." (Doc. No. 1 ¶¶ 9, 11.) As relevant here, the RA defines a disabled person as one who has "a physical or mental impairment that substantially limits one or more major life activities" or is "regarded as having such an impairment." 29 U.S.C. § 705(20)(B)); 42 U.S.C. § 12102(1)(A), (C). Walking is indisputably a "major life activity." 42 U.S.C. § 12102(2)(A). The court accepts, for purposes of the Motion to Dismiss, that the plaintiff has adequately alleged that she has a disability.

The plaintiff also alleges that her difficulty walking was "obvious to anyone who saw her walk" and that she told Becnel-Taylor that "she had a disability that made walking difficult." (Doc. No. 1 ¶ 11.) She argues on this basis that she has plausibly alleged that the defendant "intentionally discriminated against her due to her known or obvious disability." (Doc. No. 26, at 7 (quoting *Cohen v. Transp. Sec. Admin.*, No. 16-cv-2529-SHL-cgc, 2016 WL 9450439, at *4 (W.D. Tenn. Nov. 10, 2016)).) She asserts that the question of whether Becnel-Taylor told Benesch (the direct supervisor who terminated her) about her disability is, at a minimum, a matter for discovery. For purposes of the plaintiff's motion to dismiss, the court imputes Becnel-Taylor's knowledge of the plaintiff's disability to the defendant.

---

[3] The defendant does not seek dismissal of the RA discrimination claim for failure to exhaust, so the court does not address this argument.

Regardless, even giving the plaintiff the benefit of every doubt, the Complaint does not plausibly allege facts suggesting a causal connection between the plaintiff's alleged disability and her termination. Speculation alone does not give rise to a plausible claim. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level." (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")). The plaintiff does not allege that any of the difficulties in performing her job from home were related to her disability, that her disability was ever a topic of conversation, or that she had any plausible basis for believing that her termination was related to her disability. The court, applying its judicial experience and common sense to the specific context presented here, finds that the allegations that the plaintiff suffered from a disability, the employer knew she had a disability, and her employment was terminated, standing alone, simply are not sufficient to plausibly state a disability discrimination claim.

The plaintiff had a job that allowed her to work from home on the computer, and her alleged disability of having trouble walking admittedly had no impact on her job. She alleges that she had technical difficulties while working from home that affected her productivity, that she complained about those issues and requested to be moved to another team, and that her supervisor ignored her requests for assistance in dealing with her technology- and equipment-related problems. None of these allegations suggests a causal connection between her disability and her termination. "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 U.S. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

The Complaint fails to state a colorable claim for discrimination on the basis of disability in violation of the RA, under the plausibility standard established by *Iqbal* and *Twombly*.

**B.      RA Claim for Failure to Accommodate**

Exhaustion of administrative remedies is a prerequisite to seeking judicial remedies against federal employers under the RA. *Taylor v. Donahoe*, 452 F. App'x 614, 617 (6th Cir. 2011); *Smith v. U.S. Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984). Typically, "a plaintiff has exhausted her administrative remedies with respect to a specific claim if she includes that claim in her official complaint to the EEOC, thereby ensuring the EEOC was on notice of the claim during its investigation." *Ryan v. McDonald*, 191 F. Supp. 3d 729, 740 (N.D. Ohio 2016). In addition, however, in the Sixth Circuit, even if a plaintiff's claim is not explicitly included in an EEOC complaint, she may pursue judicial review of the claim if it could be reasonably expected to "grow out of" claims that were included in the EEOC complaint. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002). This rule is to be liberally applied and means that, "[b]asically, if the facts surrounding an explicitly charged claim would put the EEOC on notice of potential uncharged claims during [its] investigation, a plaintiff may bring suit on both the claims explicitly charged in and implicitly implicated by her EEOC complaint." *Ryan*, 191 F. Supp. 3d at 740.

Failure to exhaust is a "threshold issue." *Bryant v. Wilkie*, No. 3:18-CV-00104, 2020 WL 836547, at *1 n.2 (M.D. Tenn. Feb. 20, 2020), *aff'd*, 834 F. App'x 170 (6th Cir. 2020). It is appropriate to seek dismissal of RA claims for failure to exhaust under Rule 12(b)(6), because exhaustion is a "condition[s] precedent" to filing in federal court. *McKnight v. Gates*, 282 F. App'x 394, 397 n.2 (6th Cir. 2008).

In the present case, besides arguing that the Complaint fails to state a colorable claim for failure to accommodate, the defendant asserts that the claim is subject to dismissal for failure to exhaust. The plaintiff does not respond to this argument, other than by asserting broadly that the

EEOC investigated her "disability discrimination claim." (Doc. No. 26, at 4.) She does not dispute the defendant's contention that she did not exhaust the failure to accommodate claim, and she does not plead or argue that this claim could reasonably have been expected to "grow out" of her disability discrimination claim that the EEOC did investigate.

Close inspection of the EEOC complaint establishes that the plaintiff did not assert a claim based on failure to accommodate and that such a claim was not likely to grow out of her claims premised on her termination. Because it is clear from the pleadings that the plaintiff failed to exhaust her RA failure to accommodate claim, that claim, too, is subject to dismissal.

The court further finds that the Complaint fails to state a claim based on failure to accommodate. The only factual allegation in the Complaint that pertains to a failure to accommodate is contained, not in the fact section of the Complaint but under Count II, where the plaintiff states:

> Defendant refused to provide Ms. Jemmott with a reasonable accommodation of walking the shortest route to her . [sic]

(Doc. No. 1 ¶ 36.) In this case, the plaintiff has not "nudged [her] claim[] across the line from conceivable to plausible," and the claim "must be dismissed." *Twombly*, 550 U.S. at 570.

## IV.   CONCLUSION

For the reasons set forth herein, the court will grant the defendant's motion, construed as a Motion for Partial Dismissal.  An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge